**Ralph Rodney EARNEST,**
**Petitioner–Appellant,**

v.

**Donald DORSEY, Attorney General**
**of the State of New Mexico,**
**Respondents–Appellees.**

No. 94–2217.

United States Court of Appeals,
Tenth Circuit.

June 26, 1996.

J. Thomas Sullivan, Little Rock, Arkansas (Susan Gibbs, Santa Fe, New Mexico, with him on the brief), for Petitioner/Appellant.

William McEuen, Assistant Attorney General, Sante Fe, New Mexico (Tom Udall, Attorney General, with him on the brief), for Respondent/Appellee.

Before EBEL and HOLLOWAY, Circuit Judges, and BROWN, District Judge *.

EBEL, Circuit Judge.

Ralph Rodney Earnest appeals the district court's denial of his petition for a writ of habeas corpus. Earnest seeks relief on the grounds that: (1) he was retried after his first trial ended in a mistrial, in violation of the Double Jeopardy Clause of the Fifth Amendment; (2) a custodial statement by a nontestifying accomplice was admitted into evidence at his retrial in violation of the Confrontation Clause of the Sixth Amend-

---

* Honorable Wesley E. Brown, Senior United States District Court Judge for the District of Kansas, sitting by designation.

ment; and (3) on retrial, the prosecutor impermissibly referred to Earnest's post-arrest silence. We have jurisdiction under 28 U.S.C. § 2253 and now AFFIRM.

## I.

On the morning of February 12, 1982, the body of David Eastman was discovered. Eastman had been shot and his throat had been cut. Ralph Rodney Earnest, Philip Boeglin, and Perry Connor were seen in Eastman's car that morning. The three were arrested and charged with murder, conspiracy to commit murder, kidnaping, conspiracy to distribute methamphetamine and possession with intent to distribute methamphetamine. Boeglin gave a statement to the police in which he incriminated all three defendants. Earnest, Boeglin and Connor were each tried separately. *State v. Earnest*, 103 N.M. 95, 703 P.2d 872, 873 (1985).

Earnest's first trial ended in a mistrial. He was subsequently retried, convicted on all counts, and sentenced to life imprisonment for murder, eighteen years for conspiracy to commit murder (with nine years suspended), nine years for kidnaping, eighteen months for conspiracy to distribute methamphetamine and three years for possession of methamphetamine. These sentences were to be served consecutively. Earnest appealed his conviction to the New Mexico Supreme Court on the grounds that his retrial subjected him to double jeopardy, that the prosecutor at retrial impermissibly referred to his post-arrest silence, that the admission at retrial of a prior statement by codefendant Boeglin violated the Confrontation Clause, and other grounds which are not relevant here. The New Mexico Supreme Court ruled that: (1) the second trial did not violate the Double Jeopardy Clause; (2) the references to Earnest's silence were not improper; but (3) the introduction of Boeglin's statement had violated Earnest's Sixth Amend-

ment right to confrontation. It therefore set aside Earnest's conviction and ordered a new trial. *State v. Earnest*, 103 N.M. 95, 703 P.2d 872, 877 (1985) (*"Earnest I"*).

The United States Supreme Court vacated that decision and remanded to the New Mexico Supreme Court for proceedings "not inconsistent with the opinion in *Lee v. Illinois*, 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986)." *New Mexico v. Earnest*, 477 U.S. 648, 648, 106 S.Ct. 2734, 91 L.Ed.2d 539 (1986). In *Lee*, the Supreme Court held that the custodial statement of a nontestifying accomplice is presumptively unreliable and therefore inadmissible, but that the state can rebut this presumption by demonstrating "particularized guarantees of trustworthiness." 476 U.S. at 543, 106 S.Ct. at 2063 (quoting *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980)). On remand, the New Mexico Supreme Court concluded that Boeglin's statement was reliable under the *Lee* standard and reversed its prior holding, thus affirming Earnest's conviction. *State v. Earnest*, 106 N.M. 411, 744 P.2d 539, 540 (1987) (*"Earnest II"*). Earnest's petition for certiorari to the United States Supreme Court was denied. *Earnest v. New Mexico*, 484 U.S. 924, 108 S.Ct. 284, 98 L.Ed.2d 245 (1987).

Earnest filed a habeas corpus petition pursuant to 28 U.S.C. § 2254 in federal district court. The federal district court, adopting the findings and recommendations of a magistrate judge, dismissed Earnest's petition and denied a certificate of probable cause to appeal to this Court.[1]

## II.

Earnest's first contention is that his retrial after a mistrial was declared violated the Double Jeopardy Clause of the Fifth Amendment. At Earnest's first trial, Earnest moved for a mistrial on the ground that the

---

1. We grant a certificate of probable cause on appeal pursuant to 28 U.S.C. § 2253. On April 24, 1996, while this case was pending on appeal, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104–132, 110 Stat. 1214. Title I of this Act significantly curtails the scope of collateral review of convictions and sentences. We need not

decide in this case to what extent the amendments in the Act apply to petitions pending when the Act was signed into law, or what effect those amendments have if they apply, because, even under the more expansive scope of review permitted prior to the Act, the petitioner is not entitled to relief.

court had admitted hearsay statements by Boeglin and Connor that had not been made in furtherance of the alleged conspiracy. The trial judge responded that he had instructed the jury not to accept the truth of the hearsay evidence until instructed otherwise. He went on to say that were the state to rest at that point, it would lose on all counts because it had not yet demonstrated the elements of any count. The trial judge denied the motion for mistrial "at this time, at least ... because as of this point, and unless we change some things, you're going to be better having a trial and a directed verdict, then you are a mistrial." He then stated that although he was denying defendant's motion at that time, he would hold it in abeyance and consider it a continuing motion which could be raised by the court again.[2] Defense counsel agreed with this procedure and neither withdrew the mistrial motion nor moved for a directed verdict.

Later in the proceedings, the state called Boeglin to testify. Although Boeglin had been granted use immunity, Boeglin's counsel informed the court that Boeglin would refuse to answer any questions relevant to this case. The trial judge responded that Boeglin would be sworn in and questioned outside the presence of the jury, and would be sentenced to no more than thirty years imprisonment for the first question he refused to answer and one year for every subsequent question he refused to answer. Earnest's counsel again moved for mistrial, on the grounds that the judge's threat was coercive and showed improper involvement in the case. The trial judge replied that he would withhold ruling on the motion until after Boeglin's testimony, and might grant it then. He stated that he would be more than glad to grant a mistrial rather than dismiss the charges, since only if a mistrial were granted could Earnest be retried. Despite these warnings, Earnest's counsel did not withdraw the motion for mistrial. During Boeglin's testimony, Boeglin repeatedly refused to answer questions, and with each refusal the court found Boeglin in contempt of court,

ultimately sentencing him to twenty-six years in prison for criminal contempt.

At the conclusion of Boeglin's testimony, the trial judge announced that he would grant defendant's motions for a mistrial. Earnest's counsel then immediately attempted to withdraw the motions. The judge nonetheless ordered a mistrial based upon defendant's motions, particularly the most recent motion. To Earnest's objection, the trial judge responded that he had warned counsel that his outstanding mistrial motion was not in Earnest's best interests because at the time it was made the state had not shown all of the elements of any of the offenses charged. The judge reiterated that he was declaring a mistrial based upon Earnest's motion and the court's confession of error on questioning Boeglin out of the jury's presence. The court found that the mistrial was also required by manifest necessity.

■ Whether a defendant's retrial is barred by the Double Jeopardy Clause is a question of law which we review de novo. *Mannes v. Gillespie*, 967 F.2d 1310, 1313 (9th Cir.1992), *cert. denied*, 506 U.S. 1048, 113 S.Ct. 964, 122 L.Ed.2d 121 (1993). However, the factual findings of the state appellate court, absent factors not present here, are presumed to be correct, *see* 28 U.S.C. § 2254(d), even when those facts may be dispositive of the ultimate constitutional issue, *Case v. Mondragon*, 887 F.2d 1388, 1393 (10th Cir.1989), *cert. denied*, 494 U.S. 1035, 110 S.Ct. 1490, 108 L.Ed.2d 626 (1990). The federal magistrate's factual findings are reviewed for clear error. *See Hill v. Reynolds*, 942 F.2d 1494, 1495 (10th Cir.1991).

■ When a trial is not completed and a mistrial is declared, the Double Jeopardy Clause precludes the retrial of the defendant unless the defendant consented to the mistrial, *see United States v. Dinitz*, 424 U.S. 600, 607, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976), or unless the mistrial was compelled by "manifest necessity," *see Arizona v. Washington*, 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978). "[A] motion by

**2.** In *Earnest I* the New Mexico Supreme Court characterized the court as having "taken the[ ] [mistrial] motion[ ] under advisement." 703

P.2d at 874. That finding is fairly supported by the record.

the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error." *United States v. Jorn,* 400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971) (plurality opinion). There is, however, an exception to this principle: when a defendant's motion for mistrial is the result of judicial or prosecutorial impropriety that was intended to provoke the defendant into filing the motion, there has been no consent and the Double Jeopardy Clause bars retrial. *Oregon v. Kennedy,* 456 U.S. 667, 679, 102 S.Ct. 2083, 2091, 72 L.Ed.2d 416 (1982).

■ Earnest protests that although he moved for a mistrial, his attempt to withdraw the motions immediately upon the trial court's announcement that it would terminate the trial demonstrates that he did not in fact consent to a mistrial. He directs our attention to cases in which a defendant's motion for mistrial was not found to constitute consent when the defendant timely withdrew or attempted to withdraw it. In *United States v. Crotwell,* 896 F.2d 437, 438–39 (10th Cir. 1990), this Court held that a defendant who moved for a mistrial but then withdrew the motion at the hearing on the mistrial request had not consented to a mistrial. A similar approach was followed in *Weston v. Kernan,* 50 F.3d 633 (9th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 351, 133 L.Ed.2d 247 (1995). In *Weston,* the defendant made an oral motion for mistrial without specifying whether he sought the mistrial with or without prejudice. He did not withdraw his oral motion, but subsequently entered a written motion which made it clear that he sought only a mistrial with prejudice. The trial court declared a mistrial without prejudice, to which defendant immediately and repeatedly objected. The Ninth Circuit found that defendant did not consent to the mistrial without prejudice as declared. *Id.* at 637.

We find Earnest's case distinguishable, however. Unlike the defendant in *Crotwell,* Earnest did not attempt to withdraw the motions before they were granted. Neither did Earnest, like the defendant in *Weston,* make an intervening motion which could fairly be seen as an attempt to clarify, or with-

draw and replace, his open-ended mistrial motions. Nor may Earnest explain his failure timely to object by claiming that he was misled into believing that the judge had decided not to grant his mistrial motions. *Cf. United States ex rel. Russo v. Superior Court,* 483 F.2d 7, 17 (3d Cir.) (defendant did not consent to mistrial when, after defendant moved for mistrial on grounds of jury deadlock, the judge allowed jury to deliberate another day before unexpectedly declaring mistrial for jury exhaustion without allowing defendant to object), *cert. denied,* 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed.2d 315 (1973). Rather, Earnest stood by his mistrial motions in the face of the trial court's explicit statements that the motions were under consideration, that they might be granted, and even that they were not in his best interests. We agree with the New Mexico Supreme Court that "defense counsel was given ample opportunity prior to the declaration of mistrial to withdraw the motions and failed to do so." *Earnest I,* 703 P.2d at 875. We therefore find that Earnest's consent to mistrial may be properly implied. *See United States v. Goldstein,* 479 F.2d 1061, 1067 (2d Cir.) (consent was implied where defendants moved for a mistrial and failed to communicate their alleged change in position to the trial judge notwithstanding adequate opportunity to do so), *cert. denied,* 414 U.S. 873, 94 S.Ct. 151, 38 L.Ed.2d 113 (1973).

Earnest also argues that, although the court found manifest necessity for the mistrial, "the true reason mistrial was granted was ... the court's concern that the State's case would fail without the testimony of witness Boeglin." Br. of Appellant at 21. Because we have determined that Earnest's failure timely to withdraw his own motion for mistrial removed the double jeopardy barrier to reprosecution, we need not address whether there was manifest necessity for a mistrial. However, in discussing the court's desire to avoid acquittal, Earnest suggests that the trial judge deliberately forced him into moving for a mistrial through his "improper coercion exercised against witness Boeglin" in trying to force Boeglin to testify. Br. of

Appellant at 20 [3]. We therefore must determine whether Earnest's motion for a mistrial was intentionally provoked by the trial court.

■■■ Judicial conduct which prompts the defendant to move for a mistrial will bar retrial "[o]nly where the ... conduct in question is intended to 'goad' the defendant into moving for a mistrial." *Oregon v. Kennedy*, 456 U.S. 667, 676, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 416 (1982).[4] The defendant has the burden of proving that the judge acted with intent to provoke a mistrial. *See United States v. Borromeo*, 954 F.2d 245, 247 (4th Cir.), *cert. denied*, 505 U.S. 1212, 112 S.Ct. 3012, 120 L.Ed.2d 885 (1992). This is an extremely exacting standard. *See United States v. Pavloyianis*, 996 F.2d 1467, 1469 (2d Cir.1993) ("only a high-handed wrong intentionally directed against defendant's constitutional right will trigger" the Double Jeopardy Clause). This intent standard requires the court to make a finding of fact as to the judge's motivation. *Kennedy*, 456 U.S. at 675, 102 S.Ct. at 2089. The federal magistrate, in findings adopted by the district court, determined that the trial judge's behavior in threatening Boeglin was improper under *Webb v. Texas*, 409 U.S. 95, 97, 93 S.Ct. 351, 353, 34 L.Ed.2d 330 (1972) (that witness who was previously willing to testify refused to testify after judge's stern warnings strongly suggests that the judge's conduct caused the witness's refusal). However, observing that the trial judge had granted use immunity for Boeglin's testimony, the magistrate found that Earnest had failed to demonstrate that he "was forced to make his second motion for mistrial by improper bad faith judicial conduct." We find no error in this finding. Moreover, we note that the trial court's repeated warnings to defense counsel that his motions for mistrial were not in defendant's interest contradict any infer-

ence that the court deliberately provoked a mistrial.

### III.

Earnest next contends that the admission, at his retrial, of a statement by codefendant Boeglin violated his right under the Sixth Amendment to confront the witnesses against him. After being arrested and advised of his rights, Boeglin made a voluntary statement to law enforcement officers which was taped and subsequently transcribed. The statement implicated all three defendants in planning and executing the victim's murder. At Earnest's second trial, Boeglin was called as a witness and refused to testify, invoking his Fifth Amendment privilege against self-incrimination. Boeglin was declared an unavailable witness and Boeglin's audiotaped statement was played for the jury. The jury was also allowed to use individual transcripts of the statement to follow along with the tape. Earnest objected both to Boeglin's being declared an unavailable witness and to the use of the statement, arguing that the use of the statement violated his rights to confront and cross examine the witness.

■■■ The Confrontation Clause of the Sixth Amendment, applicable to the states through the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. However, the right to confrontation has never been regarded as absolute, and "does not necessarily prohibit the admission of hearsay statements against a criminal defendant." *Idaho v. Wright*, 497 U.S. 805, 813, 110 S.Ct. 3139, 3145, 111 L.Ed.2d 638 (1990). In general, an out-of-court statement may constitutionally be introduced against a defendant only if the statement bears adequate "indicia of reliability." *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980).[5]

---

**3.** Boeglin's twenty-six year sentence for contempt of court was later reversed on appeal. *See State v. Boeglin*, 101 N.M. 567, 686 P.2d 257 (Ct.App.1984).

**4.** Although in *Kennedy* it was prosecutorial and not judicial conduct that was at issue, this standard is also applied to judicial conduct. *See, e.g., Crotwell*, 896 F.2d at 439 n. 5.

**5.** In at least some instances it must also be shown that the declarant was unavailable. *See Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539. Earnest does not challenge on appeal the district court's determination of Boeglin's unavailability. We therefore do not address whether such a showing would be necessary here, where the statement sought to be introduced was not made in the course of a prior judicial proceeding. *See*

Accordingly, the issue before us is whether the statement was sufficiently reliable to satisfy the Confrontation Clause. Generally, evidence is presumptively reliable if it comes within a firmly rooted hearsay exception. *Id.* Boeglin's statement, however, cannot be immunized by the exception for statements against interest. Although it is a statement against penal interest, *cf.* Fed. R.Evid. 804(b)(3), the Supreme Court has held that in this context that hearsay exception "defines too large a class for meaningful Confrontation Clause analysis." *Lee v. Illinois,* 476 U.S. 530, 544 n. 5, 106 S.Ct. 2056, 2064 n. 5, 90 L.Ed.2d 514 (1986).[6] Moreover, custodial confessions "have traditionally been viewed with special suspicion." *Id.* at 541, 106 S.Ct. at 2062. Therefore, Boeglin's statement was "presumptively unreliable," *id.,* and was admissible against Earnest only if the state demonstrated "particularized guarantees of trustworthiness." *Id.* at 543, 106 S.Ct. at 2063. In evaluating the reliability of the hearsay statements, we presume

that the factual findings of the New Mexico Supreme Court are correct; however, whether the hearsay statements are reliable is a mixed question of law and fact reviewed *de novo.* *Myatt v. Hannigan,* 910 F.2d 680, 685 (10th Cir.1990).

On remand from the United States Supreme Court, the New Mexico Supreme Court found that Boeglin's statement was sufficiently reliable to withstand Earnest's Confrontation Clause challenge. The court found four independent indicia of reliability. First, "the colloquy between Boeglin and the investigating officers reflects the fact that Boeglin was not offered any leniency in exchange for his statement. In fact, Boeglin was convicted of murder and is serving a life sentence." *Earnest II,* 744 P.2d at 540. Second, the New Mexico Supreme Court found the statement reliable because it "was strongly against Boeglin's penal interest." *Id.* The court noted that Boeglin, in his statement, admitted to trying to cut the victim's

*White v. Illinois,* 502 U.S. 346, 354, 112 S.Ct. 736, 741, 116 L.Ed.2d 848 (1992) (characterizing *Roberts* as "stand[ing] for the proposition that unavailability analysis is a necessary part of the Confrontation Clause inquiry only when the challenged out-of-court statements were made in the course of a prior judicial proceeding"); *Minner v. Kerby,* 30 F.3d 1311, 1315 (10th Cir.1994), (noting that *White* "indicates that the unavailability requirement announced in *Ohio v. Roberts* may be limited to its facts, where the prosecution seeks to introduce prior testimony," but relying on other grounds to find the unavailability requirement inapplicable to the admission of chemist's notes); *but cf. Hatch v. Oklahoma,* 58 F.3d 1447, 1467 (10th Cir.1995) (stating in dicta that "[f]or the admission of hearsay evidence to comply with the Sixth Amendment, the witness must be unavailable and the statement must bear 'sufficient indicia of reliability.'") (citing *Roberts* ), *cert.* denied, — U.S. —, 116 S.Ct. 1881, 135 L.Ed.2d 176 (1996).

6. We do not address whether, in general, the exception for statements against penal interest is firmly rooted. *Cf. United States v. York,* 933 F.2d 1343, 1363 n. 4 (7th Cir.) (noting that *Lee* did not determine whether the declaration against interest exception to the hearsay rule is firmly rooted but rather held only that an accomplice's declarations inculpatory of the defendant are presumptively unreliable), *cert. denied,* 502 U.S. 916, 112 S.Ct. 321, 116 L.Ed.2d 262 (1991). We are aware that at least one court has interpreted language from our opinion in *Jennings v. May-*

nard, 946 F.2d 1502, 1505–06 (10th Cir.1991), as holding that the statement against penal interest exception is a firmly rooted hearsay exception. *See United States v. Dean,* 59 F.3d 1479, 1493 n. 24 (5th Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 794, 133 L.Ed.2d 742 (1996). However, *Jennings* is not inconsistent with our decision today, as it did not hold that an accomplice's statement inculpating a defendant is presumptively reliable. Such a holding would be inconsistent not only with *Lee,* but with two cases decided by this Court after *Lee* but prior to *Jennings.* In *United States v. Gomez,* 810 F.2d 947, 954 n. 8 (10th Cir.), *cert. denied,* 482 U.S. 908, 107 S.Ct. 2488, 96 L.Ed.2d 379 (1987), and *United States v. Hill,* 901 F.2d 880, 883 n. 1 (10th Cir.1990), we recognized that a confession by an accomplice proffered at trial to incriminate a criminal defendant falls within a subset of "statements against penal interest" which implicates special constitutional concerns and requires separate analysis under *Lee.* The panel decision in *Jennings,* of course, could not overrule prior circuit precedent. *See United States v. Zapata,* 997 F.2d 751, 759 n. 6 (10th Cir.1993) (one panel of the court cannot overrule the decision of another panel). Moreover, the *Jennings* court did not find the statement at issue reliable only because it was a statement against the declarant's interest; rather, the court found that "other indicia of reliability clearly support the trustworthiness of [the] statement." 946 F.2d at 1506. Thus, any language indicating that an accomplice's confession incriminating a codefendant is presumptively reliable merely because it falls within the statement against interest exception would be dicta.

throat at a time when those wounds were thought to have been the cause of death. *Id.* Moreover, the admission of participation in the murder exposed Boeglin to a possible death sentence, as it was admittedly committed under aggravating circumstances. *Id.* Third, the court found the statement reliable "because Boeglin did not attempt in the statement to shift responsibility from himself to his accomplices" but rather "told a gruesome story which equally implicated all three men." *Id.* Finally, the court found the statement reliable "because there was independent evidence presented at trial which substantially corroborated Boeglin's description of events surrounding the murder." *Id.* For example, Boeglin's description of initial efforts to kill the victim with an overdose of methamphetamine was corroborated by the testimony of a toxicologist, and his description of where the murder weapon was hidden led to the recovery of the gun.

The magistrate judge who considered Earnest's federal habeas claim also concluded that Boeglin's statement was reliable. In addition to finding that the statement was primarily against Boeglin's penal interest, the magistrate determined that the statement was reliable because: (1) Boeglin was not induced by promises by the police or district attorney to confess; (2) Boeglin had no cause to retaliate against Earnest nor would he lightly decide to be a "snitch"; (3) Boeglin was willing to undergo a lie detector test; and (4) Boeglin's emotional state was no more agitated than would be expected from one arrested on a murder charge. However, the magistrate refused to consider evidence that corroborated Boeglin's statement as an indication that the statement itself was inherently more reliable. He explained that he was excluding such evidence in accordance with the Supreme Court's decision in *Idaho v. Wright,* 497 U.S. 805, 823, 110 S.Ct. 3139, 3150, 111 L.Ed.2d 638 (1990) that corroborating evidence may not be considered as an indicium of reliability for hearsay statements.

■ The government protests that the holding in *Idaho v. Wright* is a "new rule" and may not be applied to Earnest, whose conviction became final when the Unit-

ed States Supreme Court denied certiorari in 1987. *See Caspari v. Bohlen,* 510 U.S. 383, ——, 114 S.Ct. 948, 953, 127 L.Ed.2d 236 (1994) ("A state conviction . . . become[s] final for purposes of retroactivity analysis when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied.") (citation omitted). A habeas petitioner may not seek to enforce a "new rule" of law that was announced after his conviction became final unless the rule fits into one of two narrow exceptions: if it "places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe" or if it "requires the observance of those procedures that . . . are implicit in the concept of ordered liberty." *Teague v. Lane,* 489 U.S. 288, 307, 109 S.Ct. 1060, 1073, 103 L.Ed.2d 334 (1989) (internal quotation marks omitted). "[A] case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction was final." *Id.* at 301, 109 S.Ct. at 1070 (emphasis in original). In determining whether a decision results in a new rule, a federal court must "determine whether a state court considering [the defendant's] claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [he] seeks was required by the Constitution." *Caspari,* 510 U.S. at ——, 114 S.Ct. at 953 (quoting *Saffle v. Parks,* 494 U.S. 484, 488, 110 S.Ct. 1257, 1260, 108 L.Ed.2d 415 (1990)).

■ We do not believe that a state court considering Earnest's claim in 1987 would have felt compelled to conclude that the Constitution forbade the use of corroborating evidence to demonstrate the reliability of a hearsay statement. Indeed, this Court in 1989 stated that "independent corroboration [of a hearsay statement] is an important indicium of reliability in Confrontation Clause analysis." *Hopkinson v. Shillinger,* 866 F.2d 1185, 1201 (10th Cir.1989) (citing cases), *on reh'g on other grounds,* 888 F.2d 1286 (10th Cir.1989) (en banc), *cert. denied,* 497 U.S. 1010, 110 S.Ct. 3256, 111 L.Ed.2d 765 (1990). Our opinion was shared by sev-

eral other circuits. *See, e.g., Berrisford v. Wood,* 826 F.2d 747, 750 (8th Cir.1987), *cert. denied,* 484 U.S. 1016, 108 S.Ct. 722, 98 L.Ed.2d 671 (1988); *Barker v. Morris,* 761 F.2d 1396, 1402 (9th Cir.1985), *cert. denied,* 474 U.S. 1063, 106 S.Ct. 814, 88 L.Ed.2d 788 (1986). Moreover, as acknowledged in *Idaho v. Wright,* a plurality of the Supreme Court in the earlier case of *Dutton v. Evans,* 400 U.S. 74, 88, 91 S.Ct. 210, 219, 27 L.Ed.2d 213 (1970), had looked to corroborating evidence as one of four factors in determining whether a specific hearsay statement possessed sufficient indicia of reliability. *See* 497 U.S. at 823, 110 S.Ct. at 3150. Thus, because the Supreme Court's decision in *Idaho v. Wright* was "a 'developmen[t] in the law over which reasonable jurists [could] disagree,'" *Caspari,* 510 U.S. at ——, 114 S.Ct. at 956 (quoting *Sawyer v. Smith,* 497 U.S. 227, 234, 110 S.Ct. 2822, 2827, 111 L.Ed.2d 193 (1990)), it constitutes a new rule for purposes of retroactivity analysis.[7]

■ We further find that the rule excluding corroborating evidence from consideration does not fit into one of the two exceptions justifying retroactive application. It neither places individual conduct beyond the reach of lawmakers nor announces a "'watershed rule[ ] of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Caspari,* 510 U.S. at ——, 114 S.Ct. at 956 (quoting *Saffle v. Parks,* 494 U.S. 484, 495, 110 S.Ct. 1257, 1264, 108 L.Ed.2d 415 (1990)). Thus, the New Mexico Supreme Court did not err in 1987 when it considered corroborating evidence as indicative of the reliability of Boeglin's statement.

■ Even without consideration of the trial evidence corroborating Boeglin's statement, however, we find the statement reliable, as it bears other important indicia of reliability. First, the statement was strongly against Boeglin's penal interest. We are mindful that in *Lee,* the Supreme Court found an accomplice's confession unreliable,

and, as noted above, stated that the concept of a declaration against penal interest "defines too large a class for meaningful Confrontation Clause analysis." 476 U.S. at 544 n. 5, 106 S.Ct. at 2064 n. 5. Accordingly, in light of *Lee* we view a hearsay statement's adverse effect on the declarant's penal interest not as dispositive of reliability, but as "one factor entitled to some consideration." *United States v. Gomez,* 810 F.2d 947, 954 n. 8 (10th Cir.), *cert. denied,* 482 U.S. 908, 107 S.Ct. 2488, 96 L.Ed.2d 379 (1987).

Earnest relies heavily on *Williamson v. United States,* —— U.S. ——, 114 S.Ct. 2431, 129 L.Ed.2d 476 (1994), in which the Supreme Court held that Federal Rule of Evidence 804(b)(3), which permits the admission of hearsay statements against the declarant's penal interest, "does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory." *Id.* at ——, 114 S.Ct. at 2435. Earnest concedes that *Williamson* expressly declined to address whether the Confrontation Clause mandates a similar rule, *id.* at ——, 114 S.Ct. at 2437, but argues that its reasoning is compelling and ought to have been applied by the state court and the magistrate to his case. The government argues, predictably, that were we to determine that *Williamson* should be so applied we would be guilty of a retroactive application of a new rule in violation of *Teague.*

■ We need not resolve this dispute, however, as we see no inconsistency between the analysis of Boeglin's statement undertaken in accordance with the mandate of *Lee* and the Supreme Court's reasoning in *Williamson. Williamson* states that a "district court may not just assume for purposes of [the exception against penal interest] that a statement is self-inculpatory because it is part of a fuller confession," *id.* at ——, 114 S.Ct. at 2435, or because of its "proximity to self-inculpatory statements," *see id.,* or be-

---

7. The Ninth Circuit has stated that *Idaho v. Wright* did not announce a new rule but rather "applied existing precedents in measuring the admissibility of child hearsay statements." *Webb v. Lewis,* 44 F.3d 1387, 1391 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2002, 131 L.Ed.2d 1003 (1995). Unlike *Webb,* however, this case does not concern the specific precedents regarding child hearsay statements relied on by *Wright* but rather concerns the general issue of whether independent corroborating evidence may serve as an indicium of reliability.

cause the statement is "collateral to a self-inculpatory statement," *see id.* Rather, "whether a statement is self-inculpatory or not can only be determined by viewing it in context" and "in light of all the surrounding circumstances." *Id.* at ––– – –––, 114 S.Ct. at 2436–37.

 Neither the state supreme court nor the federal magistrate assumed that Boeglin's entire narrative was reliable merely because some elements of it were self-inculpatory. Rather, both the state supreme court and the federal magistrate inquired into particularized guarantees of trustworthiness surrounding those portions of the statement incriminating Earnest, including the fact that the entire statement inculpated both Earnest and Boeglin equally, rather than relying on mere proximity to statements inculpatory of Boeglin. *Cf. United States v. Sasso,* 59 F.3d 341, 349 (2d Cir.1995) (finding *Williamson* consistent with prior Second Circuit precedent for this reason). "Even the confessions of arrested accomplices may be admissible if they are truly self-inculpatory, rather than merely attempts to shift blame or curry favor." *Williamson,* ––– U.S. at –––, 114 S.Ct. at 2436. The state supreme court and the federal magistrate specifically concluded that Boeglin attempted neither to shift blame to his co-conspirators nor to curry favor from the police or prosecutor. We agree. The following portion of Boeglin's statement is representative:

> [W]e more or less took a vote, you know, what we was going to do with [the victim] to get rid of him ... we took him out to the—well—those two other guys left then ... and left me—Rob [Earnest] and Red and me was there—and we took him out to the country on Loving Highway and ... Red starts to slow down, you know, and said, well, we might as well do it now, and I was—we was all four in the front of that El Camino—I was setting here, [the victim] was here, Rob was here, and I was there, and uh—I opened up my door and the car slid around like that, and I fell out

> my f—— ing door, and uh—[the victim] jumped out his, and—soon as he turned, he caught it by—right between the eyes and uh—he ... was still alive, and I had the knife with me—I went to cut his throat, but it didn't cut—and I was—cut it again and it just barely cut it, and—I just dropped the knife after that—and—I don't know who else—could it be, but uh—the gun started jamming up, and uh—I don't know how many shots he jammed on—they reloaded it, and—fired two more shots into him—uh I guess into his head, I don't know—then we jumped into the car ... and cleaned up everything. . . .

(R.O.A., Vol. I, doc. 18, at 16–17). Earnest protests that it is clear from Boeglin's statement that he was trying to negotiate a deal with the police. *See id.* at 11 ("I was hoping I could make some kind of deal."). Such a deal, however, was unequivocally refused at the outset of the interview. *See id.* at 12 ("I'm not offering you any deals").

In addition to being "truly self-inculpatory," we find the statement describes the crime at a level of detail which would be difficult to render in a fabricated admission. Moreover, the record discloses no evidence that Boeglin was threatened or coerced by law enforcement officers when he made the statement; rather, Boeglin appears to have made the statement voluntarily. Finally, we find no error in the magistrate's factual findings, nor any evidence to rebut the state court's factual findings, that Boeglin was offered no leniency in exchange for his statement, that at the time of the statement the act Boeglin confessed to was thought to have caused the victim's death, that Boeglin had no reason to retaliate against Earnest, and that Boeglin was not unduly agitated when he made the statement. We agree that these factors, taken together with the other factors discussed above, are sufficiently indicative of the statement's reliability. We therefore conclude that the admission of Boeglin's statement against Earnest did not violate the Confrontation Clause.[8]

8. Earnest also argues that there were insufficient indicia of reliability that he was the "Rob" referred to in Boeglin's statement, as this fact was proven by reference to other evidence from

Boeglin's own trial. This argument misconstrues the nature of the hearsay problem. An out-of-court statement is generally inadmissible when offered for the truth of the matter asserted

## IV.

Earnest's final claim of error is that at his second trial, the prosecutor impermissibly referred to his post-arrest silence. The use for impeachment purposes of a defendant's post-arrest silence following a *Miranda* warning violates the Due Process Clause of the Fourteenth Amendment. *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). "This rule is based upon a recognition that it is fundamentally unfair for the government to inform a defendant of his right to remain silent and then ask at trial that a negative inference be drawn from that silence." *United States v. Canterbury,* 985 F.2d 483, 486 (10th Cir.1993). However, the Supreme Court noted in *Doyle* that:

> [i]t goes almost without saying that the fact of post-arrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest. In that situation the fact of earlier silence would not be used to impeach the exculpatory story, but rather to challenge the defendant's testimony as to his behavior following arrest.

426 U.S. at 619 n. 11, 96 S.Ct. at 2246 n. 11. Even under this circumstance, such a reference to postarrest silence may be used only to rebut the defendant's trial testimony; the government may not attempt to use it as substantive evidence of guilt. *See United States v. Shue,* 766 F.2d 1122, 1130 (7th Cir.1985).

Defense counsel's opening statement asserted that Earnest "from the very beginning maintained his innocence—maintained it all along." Earnest testified, in response to his counsel's question, that he had maintained his innocence "from day one." He then described his actions on the night of the murder, denying any awareness of or participation in the murder or kidnaping of the victim. On cross-examination, the prosecutor asked "who else" Earnest had told the account to which he had just testified, and Earnest replied, "I've maintained that since the first day I was arrested." The prosecutor repeated the question, and Earnest replied that he had related the version of events "to my attorney." The prosecutor then asked, "Did you ever at any point in time, from the time of your arrest, all the way up through to the beginning of this trial, ever tell anyone in law enforcement 'Look, let me tell you what really happened, I wasn't there, this is the way it went down'?" Defense counsel objected, and the objection was sustained after a bench conference. The question was not answered. The prosecutor was then permitted to ask, over defense counsel's objection, whether Earnest had voluntarily allowed the police to administer a nitrate swab test upon his arrest. Earnest replied that he had resisted the test because he had asked to speak to an attorney before saying anything or submitting to any test.

The prohibition against reference to post-arrest silence does not allow the defendant to "freely and falsely create the impression that he has cooperated with police when, in fact, he has not." *United States v. Fairchild,* 505 F.2d 1378, 1383 (5th Cir.1975) (cited with approval in *Doyle* ). Thus, reference to postarrest silence is permissible for rebuttal purposes when a defendant implies that he cooperated with the police, *see United States v. Gant,* 17 F.3d 935, 941–42 (7th Cir.1994), or implies that he gave police an exculpatory statement, *see Leecan v. Lopes,* 893 F.2d 1434, 1441–42 (2d. Cir.), *cert. denied,* 496 U.S. 929, 110 S.Ct. 2627, 110 L.Ed.2d 647 (1990). Earnest testified that he had consistently maintained his innocence, and implied that he had consistently offered the exculpatory version of events that he offered on the stand. We therefore find that this testimony invited impeachment, and that the prosecutor did not make improper use of Earnest's silence.[9]

therein. To satisfy the Confrontation Clause there must be indicia that the statement is reliable as to its substance. Thus, the relevant hearsay question is whether Boeglin truthfully recounted "Rob's" participation in the events; other evidence may be properly looked to establish whether "Rob" is the defendant. Earnest has not alleged that there in fact is any doubt that he was "Rob." We therefore reject this claim.

9. It is unclear whether a *Doyle* violation would be found in this case in any event, as the defense's objection to the prosecutor's single ques-

## V.

For the foregoing reasons, the judgment of the District Court is AFFIRMED.

tion was promptly sustained. *See Greer v. Miller,* 483 U.S. 756, 759, 107 S.Ct. 3102, 3105, 97 L.Ed.2d 618 (1987) (no *Doyle* violation occurred when (1) defense counsel's immediate objection to single improper question was sustained; (2) jury was immediately instructed to ignore the question, and subsequently instructed to disregard questions to which objections were sustained; (3) the prosecutor did not pursue the issue further nor mention it in closing argument; and (4) defense counsel did not renew his objection or request a curative instruction). Even assuming we were to find a *Doyle* violation, moreover, the references challenged by Earnest did not have "substantial and injurious effect or influence in determining the jury's verdict" and thus any error was harmless. *Brecht v. Abrahamson,* 507 U.S. 619, 623, 113 S.Ct. 1710, 1713, 123 L.Ed.2d 353 (1993) (holding *Doyle* violations subject on habeas review to the quoted harmless error analysis). Given that Earnest does not allege that the prosecutor referred again to his silence, either later in cross-examination or in oral argument, and given the other evidence against Earnest, the allusion to Earnest's silence was so minimal as to be harmless.