**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

KEVIN D. HOUSLEY,

Petitioner-Appellant,

v.

BRENT FATKIN, Warden;
ATTORNEY GENERAL OF THE
STATE OF OKLAHOMA,

Respondents-Appellees.

No. 04-6052
(D.C. No. CV-02-1040-M)
(W.D. Okla.)

**ORDER AND JUDGMENT** *

Before **EBEL** , **HARTZ** , and **McCONNELL** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

_____

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Kevin D. Housley appeals the district court's denial of his application under 28 U.S.C. § 2254. He was convicted in Oklahoma state court on one count of shooting with intent to kill, and was sentenced to a prison term of 75 years. His conviction was affirmed on appeal to the Oklahoma Court of Criminal Appeals (OCCA). The United States Supreme Court then denied his petition for a writ of certiorari. Mr. Housley initiated state post-conviction proceedings, which ended when the OCCA affirmed the denial of relief. Mr. Housley then filed his § 2254 application, which the district court denied. After Mr. Housley filed his opening brief, we granted a certificate of appealability on the following issue: Whether the Oklahoma trial court violated defendant's right against double jeopardy by intentionally goading him into moving for a mistrial. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a) and affirm.

I

Mr. Housley's first jury trial began on November 4, 1998. The State's first witness was Michael Baker, the person Mr. Housley was accused of trying to kill by shooting at him from a car parked in front of a house he was visiting. Defense counsel began his cross-examination by trying to impeach Mr. Baker as to the time of day that the shooting happened. Mr. Baker had testified on direct examination that the shooting occurred after 5 or 6:00 p.m. But defense counsel obtained his admission on cross-examination that at the preliminary hearing he

had sworn that the shooting occurred "in the middle of the day." R. Doc. 9, Trial Tr. vol. I at 41.

Before counsel could proceed to another topic, the judge interrupted and convened a bench conference. The judge instructed defense counsel as follows: "Now, when you've asked the witness a question that he answered inconsistently with his testimony today, you have to give him an opportunity to explain the difference in his answer." *Id.* Defense counsel objected and explained "that a proper part of a cross-examination is an impeachment with an inconsistent statement." *Id.* The judge ordered him to proceed as directed. Defense counsel agreed to do so, but he stated for the record that he felt that the judge's instruction violated Mr. Housley's right to confrontation and that any clarification of testimony should be on redirect.

Defense counsel's next question was whether Mr. Baker agreed that there was "a difference between after 5 and 6:00 at night and mid-day." *Id.* at 42. Although the prosecutor did not object, the judge interrupted before the witness could answer, stating: "I don't believe you have asked the proper question. I believe you need to rephrase your question." *Id.* Defense counsel responded by requesting a bench conference, which was granted. At the bench conference defense counsel asked whether the judge was instructing him to ask "open-ended questions to this witness so that the witness can clarify his testimony?" *Id.* at 43.

The judge responded, "Yes, exactly that. Exactly that." *Id.* Defense counsel objected again, but his objection was overruled.

Defense counsel framed the question as the judge had instructed. The following discussion then took place:

> A: Well, there's morning and then there's night and then the middle of the day . . . .
> Q: So you're saying this did occur in the middle of the day?
> A: After 5, I guess, because Ronnie and I didn't get off until 5 or 6.
> Q: You would agree with me that most common people refer to mid-day as noon. Wouldn't you agree with that?
> A: Yes, sir.
> Q: You would agree that most people talk about mid-day breaks or mid–day lunch as the middle of the day. You would agree with that?
> A: I guess. I don't know.

*Id.* at 44. At this point the judge interrupted and asked, "Mr. Baker, do you know what most people refer to as something? Are you acquainted with most people?" *Id.* Mr. Baker answered, "No, sir." *Id.* The judge then stated, "That's an improper question, Counselor." *Id.* After that, defense counsel moved on to a different line of questioning.

During later cross-examination, Mr. Baker agreed that he did not get more than four or five feet beyond the front of the house while the shooting was occurring. Counsel then elicited that Mr. Baker had estimated the distance from the front of the house to the street to be only about 25 feet. Mr. Baker also said, however, that he would not quibble about distances because he "ain't no expert or nothing." *Id.* at 55. The following exchange then took place:

-4-

Q: So, if I told you, Mr. Baker, that the distance from three feet off the curb in front of Southwest 24th, number 615, where the Camaro was seen, from that point to the front edge of the house is 57 feet two inches, standing there, you will not quibble with me, correct?

A: Like I said, I'm no expert in measurements, so.

Q: So you'll agree with me?

*Id.* at 55-56. The judge interrupted:

The Court: Well, now, Mr. Ehlers, you're going to be testifying here. You're real close to testifying, aren't you?

Mr. Ehlers: I'm not testifying, Your Honor, I'm asking him if he'll quibble with me if its the distance.

The Court: Sounds to me like you're trying to get into evidence that it is that distance and we don't have any witness here who has testified to the distance at this point.

Mr. Ehlers: Well, Your Honor, I would ask the record reflect that I'm standing in the back of the courtroom. I have not suggested that I'm testifying. I've asked this witness if he would quibble with me over 57 feet two inches if I told him that's what it was.

The Court: Why don't you ask him if he'd quibble with you if you said it was 300 feet or a thousand feet? Mr. Deutsch, do you ever object to a question?

Mr. Deutsch: Yes, sir, I do, but the witness answered the question that he's not an expert, and it's pretty abundantly clear that he's not arguing the distance with the man. He told him where he was.

*Id.* at 56.

The judge then said that it was time for the lunch break, but asked to see counsel before they left. The judge and defense counsel discussed the previous line of questioning. Defense counsel stated that he believed the inquiry was proper and pointed out that the State had not objected. He complained that there were "about six to eight times where the Court has interposed its own objections

-5-

to my cross examination without objection from Counsel, so, I am now at this point, in defending Mr. Housley, faced with dealing with the objections of both the State and . . . the Court." *Id.* at 58. Defense counsel further complained that "with the numerous objections from the Court and with the fact that I'm having to give open-ended questions and let Mr. Baker explain his testimony, that my client's right to confrontation is being seriously damaged here. I'm very concerned about that." *Id.*

The judge and defense counsel then spoke about the judge's interruption of questioning just prior to the break. The judge admitted that he had "said facetiously, ask him if he would object to you at 300 feet." *Id.* at 59. Defense counsel explained that he felt that "the Court is in essence dressing me down in front of this jury when I'm trying to do a cross examination." *Id.* at 60. In response the judge asked whether the defense wanted a mistrial. Defense counsel answered that he was torn because Mr. Housley had waited over a year to get to trial. The judge replied, "Well, you've got to put up with a cantankerous judge, I guess, then." *Id.* Defense counsel said that he wanted to talk to his client before he decided whether to ask for a mistrial.

Also during the conference defense counsel requested that if the judge had further problems with his cross-examination, he call counsel to the bench rather

than dress him down in front of the jury so that the jury would not be influenced improperly. The judge responded that he would consider the suggestion.

When court reconvened, defense counsel moved for a mistrial. Before counsel could finish his sentence and explain the basis for his request, the court granted the motion. Defense counsel then stated for the record that he was seeking the mistrial because he felt "there's no way that we can repair what's occurred here." *Id.* When counsel pressed for a quick retrial, the judge replied that he could "set [the case] in '98 . . . but I won't try it." *Id.* at 76. The retrial took place in June 1999 before a different judge. The second jury convicted Mr. Housley of shooting with intent to kill.

II

According to Mr. Housley, being subjected to a second trial violated the prohibition against double jeopardy. On direct appeal he alleged that even though he consented to the mistrial, the trial judge had intentionally goaded him into requesting a mistrial. The OCCA disagreed, finding that "[Mr. Housley] cannot show . . . the trial judge[] intentionally goaded his trial counsel into requesting the mistrial." R. Doc. 7, Ex. D at 3. The federal district court determined that Mr. Housley had not demonstrated his entitlement to habeas relief on this claim.

When this court reviews the denial of a § 2254 application:

Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a

-7-

> decision adjudicated on the merits in state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).

*Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The OCCA's determination that the trial judge did not intentionally goad defense counsel into requesting a mistrial is a factual finding. *See Oregon v. Kennedy*, 456 U.S. 667, 675 (1982); *see also United States v. Valadez-Camarena*, 163 F.3d 1160, 1163 (10th Cir. 1998). Mr. Housley has failed to show by clear and convincing evidence that this determination was incorrect. In addition, Mr. Housley has not demonstrated that the OCCA's conclusion that Mr. Housley's retrial was not barred by double jeopardy is objectively unreasonable based on the evidence presented in the state-court proceeding.

Ordinarily, if "a mistrial is declared, the Double Jeopardy Clause precludes the retrial of the defendant unless the defendant consented to the mistrial . . . ." *Earnest v. Dorsey*, 87 F.3d 1123, 1128 (10th Cir. 1996). When the defendant moves for a mistrial, however, there is generally no barrier to a second trial. *Id.* at 1128-29. But there is "an exception to this principle: when a defendant's motion for mistrial is the result of judicial or prosecutorial impropriety that was intended to provoke the defendant into filing the motion, there has been no consent and the Double Jeopardy Clause bars retrial." *Id.* at 1129.

"Judicial conduct which prompts the defendant to move for a mistrial will bar retrial '[o]nly where the . . . conduct in question is intended to "goad" the defendant into moving for a mistrial.'" *Id.* at 1130 (quoting *Kennedy*, 456 U.S. at 676). The defendant bears the burden of demonstrating that the judge acted with the requisite intent, which is "an extremely exacting standard." *Id.* It is not enough to show that the judge committed errors, or that his conduct was harassing or overreaching. *See Kennedy*, 456 U.S. at 675-76 (describing standard for prosecutorial conduct); *Earnest*, 87 F.3d at 1130 n.4 ("Although in *Kennedy* it was prosecutorial and not judicial conduct that was at issue, this standard is also applied to judicial conduct.").

Here, Mr. Housley argues that there are three categories of evidence that demonstrate that the judge had the requisite intent: first, the judge made basic errors that belie his extensive experience on the bench; second, the judge was the one who proposed the mistrial; and third, the judge had a good reason for wanting the mistrial because he was retiring and would not have to handle any retrial. Although we agree that some of the judge's challenged behavior was improper– for example, instructing defense counsel to ask open-ended questions on cross-examination– we disagree that this kind of behavior necessarily establishes that the judge *intended* to goad the defense into asking for a mistrial. This is not the classic situation in which the prosecutor's case is going poorly so the prosecutor

starts doing outrageous things to make the defense ask for a mistrial. *See, e.g., United States v. Jozwiak*, 954 F.2d 458, 460 (7th Cir. 1992) (explaining that a prosecutor who thinks the trial is going "sour" may be motivated to precipitate a mistrial). Mr. Housley speculates that the judge provoked a mistrial because he was retiring soon; but the judge had a variety of other means, and proper ones at that, to reduce his work load in his remaining time on the bench.

Mr. Housley also points out that there was a dissent in his appeal before the OCCA. Of course, the dissent is hardly binding on this court, but even it did not suggest that the trial judge had the requisite intent. The dissent states that "the defendant was goaded into asking for a mistrial," R. Doc. 7, Ex. D at 6; but it does not refer to any record evidence that the judge *intended* to provoke defendant into asking for a mistrial. Again, "conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion [,] . . . does not bar retrial absent *intent* on the part of the [judge] to subvert the protections afforded by the Double Jeopardy Clause." *Kennedy*, 456 U.S. at 675-76 (emphasis added).

Mr. Housley has failed to rebut by clear and convincing evidence the OCCA's finding that the judge lacked the requisite intent, nor has he shown to be unreasonable the court's ultimate decision that Mr. Housley's retrial was not

barred by the Double Jeopardy Clause. The judgment of the district court is

AFFIRMED.


                                        Entered for the Court


                                        Harris L Hartz
                                        Circuit Judge