**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 8 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

PAUL DAVID BROWN, III,

        Petitioner-Appellant,

v.

JUDY UPHOFF, Director, Wyoming
Department of Corrections, in her
official capacity; ATTORNEY
GENERAL OF THE STATE OF
WYOMING,

        Respondents-Appellees.

No. 03-8019

---

**Appeal from the United States District Court**
**for the District of Wyoming**
**(D.C. No. 99-CV-2-D)**

---

Terry J. Harris, Terry J. Harris, P.C., Cheyenne, Wyoming, for Petitioner-
Appellant.

Melissa M. Swearingen, Assistant Attorney General, State of Wyoming, (Patrick
J. Crank, Attorney General, State of Wyoming, with her on the brief), Cheyenne,
Wyoming, for Respondents-Appellees.

---

Before **MURPHY, HOLLOWAY,** and **McCONNELL,** Circuit Judges.

**MURPHY**, Circuit Judge.

## I. INTRODUCTION

Petitioner-Appellant, Paul David Brown, III, appeals the district court's order denying his petition for habeas relief filed under 28 U.S.C. § 2254. Following a jury trial, Brown was convicted in Wyoming state court of conspiracy to commit murder. His conviction was affirmed on direct appeal and his subsequent state petition for post-conviction relief was denied. Brown brought a habeas petition in federal district court arguing, inter alia, that his Sixth Amendment right to confront witnesses had been violated by the admission of a confession made by a co-defendant. The district court denied Brown's petition, but granted his request for a certificate of appealability on the Confrontation Clause question. We exercise jurisdiction under 28 U.S.C. § 1291 and 28 U.S.C. § 2253 and **affirm** the denial of Brown's petition.

## II. BACKGROUND

Because the district court's order denying Brown's request for habeas relief sets forth in detail the background of Brown's conviction, we will only briefly summarize the facts. Brown was convicted of conspiring with his co-defendant, Joseph Vena, to murder James Guthrie. Brown and Vena were working as informants for the ATF at the time Guthrie was killed. Guthrie and Brown both

worked in Vena's automobile detailing center, where Brown and Vena completed drug transactions in their roles as informants. After Guthrie's body was discovered, Brown and Vena were questioned separately by investigators. Brown was arrested. After his interview, Vena accompanied investigators on a search for evidence. When nothing was located during the initial search, Vena agreed to meet with the officers for a second search. Prior to the second search, Vena was given *Miranda* warnings and interviewed again. After accompanying investigators on the second search, Vena was interviewed a third time and then arrested. The statements given by Vena described in detail how he and Brown had planned and carried out the murder.

At Brown's trial,[1] Vena invoked his Fifth Amendment privilege against self-incrimination and the district court concluded he was unavailable to testify. Vena's statements describing the murder were introduced through the testimony of an ATF agent, Kenneth Bray, and a Cheyenne police officer, Detective Richard Zukauckas. During Zukauckas' testimony, the trial court also allowed the prosecution to play a portion of a tape-recording of Vena describing how the

---

[1] Brown and Vena were tried separately. Brown was initially tried for first degree murder and conspiracy to commit murder. Brown was acquitted of the first degree murder charge, but the jury could not reach a verdict on the conspiracy charge. The facts described here relate to Brown's second trial on the conspiracy charge. Vena was convicted of first degree murder and sentenced to life in prison.

murder was planned.[2]  Defense counsel objected to the introduction of Vena's

statements on the grounds that the statements were inadmissable hearsay and

violated Brown's right to confront witnesses against him.  The trial court admitted

the statements after concluding that they were trustworthy to the extent that they

were equally incriminating to Brown and Vena.  The court did exclude some

statements by Vena indicating that it was Brown who carried out the killing.

On direct appeal, Brown reasserted his objections to the introduction of

Vena's statements.  The Wyoming Supreme Court rejected Brown's arguments,

holding that the statements were admissible under Wyoming Rule of Evidence

804(b)(3) and did not constitute a violation of the Confrontation Clause.[3]  *Brown*

*v. Wyoming*, 953 P.2d 1170, 1178-80 (Wy. 1998).  On the Confrontation Clause

---

[2]  In summary, Agent Bray testified that Vena had described where he and
Brown disposed of evidence after they had killed Guthrie.  Zukauckas testified
that Vena explained he asked Brown "if this is what he wanted to do," just prior
to entering the detail center to shoot Guthrie.  Zukauckas also testified that Vena
described how they had driven to Colorado and unloaded Guthrie's body and how
Vena and Brown had disposed of other evidence.

[3] In his 28 U.S.C. § 2254 petition before the district court, Brown also
argued that the trial court failed to make a proper finding of unavailability before
admitting Vena's confession; he was denied due process because Zukauckas
improperly vouched for the credibility of Vena; the prosecution improperly
appealed to the jurors; his right to trial by jury was violated when the trial court
gave an instruction which directed a verdict for the state upon proof of any overt
act irrespective of whether the act was committed in furtherance of the
conspiracy; his counsel was ineffective for failing to raise these issues in the
direct appeal; and his counsel was ineffective based on counsel's refusal to
provide Brown with free copies of certain records not contained in the trial
record.  We do not address these arguments here because Brown did not request a
COA regarding these issues.

question, the Wyoming Supreme Court concluded the statements made by Vena had sufficient indicia of reliability so that there was no material departure from the substance of the constitutional protection. *Id*. at 1179-1180. In doing so, the court relied upon *Ohio v. Roberts*, in which the Supreme Court of the United States held that if a hearsay declarant is not present for cross-examination, his statement is admissible only if the statement bears adequate "indicia of reliability." 448 U.S. 56, 66 (1980) (quotation omitted). Brown filed a state petition for post-conviction relief and that petition was denied.

Brown then filed for habeas relief in the United States District Court for the District of Wyoming. In its decision, the district court examined the factors relied on by the Wyoming Supreme Court to conclude that the admission of Vena's statements did not violate the Confrontation Clause. The district court determined that these factors were appropriate under *Roberts*, and that the Wyoming Supreme Court's analysis of the reliability of Vena's statements was not contrary to or an unreasonable application of clearly established federal law. Alternatively, the district court concluded that any error committed by the state court in admitting the statements would have been harmless. Accordingly, the district court denied Brown's petition for habeas relief.

The district court granted Brown's request for a certificate of appealability on two questions: (1) whether the Wyoming Supreme Court's decision that the admission of Vena's statements inculpating Brown did not violate Brown's rights

under the Confrontation Clause was contrary to or an unreasonable application of clearly established federal law, and (2) whether any possible violation of the Confrontation Clause was harmless error.

## III. DISCUSSION

### A. The Confrontation Clause Claim

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Brown claims that the admission of Vena's statements was a violation of his Confrontation Clause rights.

#### 1. AEDPA Deference

Brown filed his 28 U.S.C. § 2254 petition after April 24, 1996 and, therefore, the provisions of the Antiterrorism and Effective Death Penalty Act 0f 1996 ("AEDPA") govern this appeal. *See Battenfield v. Gibson,* 236 F.3d 1215, 1220 (10th Cir. 2001). In reviewing the denial of a habeas corpus petition, we review the district court's legal conclusions de novo and its factual findings for clear error. *Rogers v. Gibson*, 173 F.3d 1278, 1282 (10th Cir. 1999). Because the state court has reviewed the merits of Brown's claims, habeas relief is not warranted unless the state court adjudication was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d). We presume that

factual determinations made by the state court are correct unless the petitioner rebuts this presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Under *Ohio v. Roberts*, an out-of-court statement can be introduced against the defendant without violating the Confrontation Clause only if the statement bears guarantees of trustworthiness such that "there is no material departure from the reason [for] general rule" requiring confrontation. 448 U.S. 56, 65 (1980) (quotation omitted). The Wyoming Supreme Court determined that *Roberts* provided the appropriate framework for its analysis of whether the admission of Vena's statements was a violation of the Confrontation Clause. *Brown*, 953 P.2d at 1179-80. At the time of the decision, the Wyoming Supreme Court's determination was accurate.[4]

---

[4] More recently the Supreme Court has overruled *Roberts* to the extent that it would allow the admission of "testimonial" hearsay into evidence against the defendant without a prior opportunity for cross-examination. *See Crawford v. Washington*, 124 S. Ct. 1354, 1374 (2004). Vena's statement would qualify as testimonial hearsay. *Id.* To determine the applicable "clearly established" law, we look to Supreme Court precedent as it existed when the state court reached its decision. *Carter v. Ward*, 347 F.3d 860, 863 (10th Cir. 2003). Because *Crawford* was decided after the Wyoming Supreme Court announced its decision in Brown's appeal, it could only be relevant to determining the applicable "clearly established" law if it rearticulated a standard set forth in Supreme Court precedent predating the Wyoming Supreme Court's decision. As Brown noted in his submission of supplemental authority to this court, the majority opinion in *Crawford* does state, "[o]ur cases have thus remained faithful to the Framer's understanding: Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." 124 S. Ct. at 1369. The opinion

Brown contends, however, that the Wyoming Supreme Court's decision is contrary to clearly established federal law as announced in both *Williamson v. United States,* 512 U.S. 594 (1994), and *Lee v. Illinois,* 476 U.S. 530, 543-44 (1986). A decision is contrary to clearly established precedent if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Likewise, a state court decision would be contrary to clearly established law if the "state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a [different result]." *Id*. at 406.

---

goes on to make clear, however, that the approach it announces is a departure from existing precedent: "Although the results of our decisions have generally been faithful to the original meaning of the Confrontation Clause, the same cannot be said of our rationales. *Roberts* conditions the admissibility of all hearsay evidence on whether it falls under a firmly rooted hearsay exception or bears particularized guarantees of trustworthiness." *Id*. (quotations omitted). Thus, it is clear that the analytical approach announced in *Crawford* is a departure from that articulated in *Roberts* and its progeny.

Nor does the language of *Crawford* direct the conclusion that the only reasonable outcome under the *Roberts* test was the exclusion of testimonial hearsay absent a prior opportunity to cross-examine. Although the Court notes that the results of its decisions have been consistent with the holding of *Crawford*, the Court criticizes *Roberts* precisely because courts could and did apply the *Roberts* test to admit statements that should have been barred by the Confrontation Clause. *Crawford*, 124 S. Ct. at 1371 ("The unpardonable vice of the *Roberts* test, however, is not its unpredictability, but its demonstrated capacity to admit core testimonial statements that the Confrontation Clause plainly meant to exclude."). Nothing in *Crawford* suggests admitting statements under the *Roberts* test was per se unreasonable. Instead, the reasonableness of applying *Roberts* to reach that result is why the court overruled the older standard.

-8-

*Williamson* concerned whether certain evidence was admissible under Federal Rule of Evidence 804(b)(3). *Williamson*, 512 U.S. at 598-601. The Court explicitly refused to reach the issue whether the statements were inadmissible under the Confrontation Clause. *Id*. at 605. Accordingly, the Wyoming Supreme Court's decision concerning whether the admission of Vena's statement violated the Confrontation Clause could not be "contrary to" or an "unreasonable application" of *Williamson*.

Brown also asserts that the Wyoming Supreme Court's decision was contrary to *Lee* because the court considered the voluntariness of Vena's statement as contributing to its trustworthiness. Additionally, as the district court noted, the Wyoming Supreme Court relied on corroborating evidence as another indication of the reliability of Vena's statement. Because the Supreme Court of the United States determined that these factors are not appropriate indicators of trustworthiness under the *Roberts* test, we agree with Brown's assertion.

The Supreme Court's holdings regarding the use of corroborating evidence and voluntariness are unequivocal: reliance on them is inappropriate for determining whether a statement is trustworthy. The court in *Lee* noted, voluntariness "does not bear on the question of whether the confession was also free from any desire, motive, or impulse [the declarant] may have had either to mitigate the appearance of his own culpability by spreading the blame or to overstate [the defendant's] involvement." *Lee*, 476 U.S. at 544. In *Idaho v.*

*Wright*, the Court held that corroborating evidence could not be used to support the reliability of a hearsay statement. 497 U.S. 805, 822 (1990). The Court, applying the *Roberts* test, stated "[t]o be admissible under the Confrontation Clause, hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial." *Id.* Thus, courts applying the *Roberts* framework could not rely on either the voluntariness of the statement or corroborating evidence when examining the statement for indicia of reliability. By relying on these factors the Wyoming Supreme Court arrived at a conclusion "diametrically different" from Supreme Court precedent. *Williams*, 529 U.S. at 406. Accordingly, we conclude that the state court acted contrary to clearly established federal law.

We recognize that in the context of summary decisions this court has stated "we owe deference to the state court's result." *Paine v. Massie*, 339 F.3d 1194, 1198 (10th Cir. 2003); *Aycox v. Lytle*, 196 F.3d 1174, 1177-78 (10th Cir. 1999). This court has not applied the rule of *Aycox*, however, in a situation where the state court's explicit reasoning contravenes Supreme Court precedent and we decline to do so here. *Cf. Early v. Packer*, 537 U.S. 3, 7-8 (2002) (per curiam) (holding that a state court's failure to cite federal law does not render the decision contrary to rulings of the Supreme Court "so long as *neither the reasoning* nor the result of the state-court decision contradicts" Supreme Court precedent (emphasis added)).

## 2.    Retroactivity of *Crawford v. Washington*

Because the Wyoming Supreme Court's reasoning was contrary to clearly established law, AEDPA deference does not apply.  *See Spears v. Mullin*, 343 F.3d 1215, 1248 (10th Cir. 2003).  That, however, is not the end of our inquiry. We must determine *de novo* if a violation of the Confrontation Clause occurred. *Id.*

Before we proceed to the examination of whether any Confrontation Clause violation occurred, however, we determine if the Supreme Court's recent decision in *Crawford v. Washington* should be given retroactive effect in this case. Because are faced with an initial habeas petition, we determine retroactivity by applying the framework set forth in *Teague v. Lane*, 489 U.S. 288 (1989).  *United States v. Mora*, 293 F.3d 1213, 1218 (10th Cir. 2002).   In *Crawford*, the Supreme Court ruled that the admission at trial of testimonial hearsay, like the statements given by Vena in this case, is a violation of the Confrontation Clause.  124 S. Ct. 1354, 1374 (2004).   Under *Teague*, new rules of constitutional law are not made retroactive to habeas petitions unless they "place[] certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," or set forth watershed rules of criminal procedure.  *Teague*, 489 U.S. at 311 (quotation omitted).   Accordingly, our first inquiry must be whether *Crawford* created a new rule of constitutional law.

-11-

A decision by the Supreme Court announces a new rule if "the result was not *dictated* by precedent existing at the time defendant's conviction became final." *Butler v. McKellar*, 494 U.S. 407, 412 (1990) (quotation omitted). As we explained above, prior to the decision in *Crawford*, *Roberts* provided the appropriate framework for determining whether the admission of hearsay statements violated the Confrontation Clause. The Supreme Court itself noted that the logic of *Roberts* was inconsistent with the Court's conclusion in *Crawford* that the Confrontation Clause requires an opportunity to cross-examine before testimonial hearsay may be admitted against the defendant. *Crawford*, 124 S. Ct. at 1369. Thus, *Roberts* and its progeny did not dictate the result in *Crawford* and we conclude that it announces a new rule of constitutional law. *See Crawford*, 124 S. Ct. 1374 (Rehnquist C.J. dissenting) (referring to the majority's holding as a "new interpretation of the Confrontation Clause").

Whether the rule of *Crawford* should be retroactively applied, therefore, depends on whether it meets one of the two exceptions articulated by the Court in *Teague*. Clearly, the first exception does not apply because *Crawford* does not place private conduct beyond the power of law-making authority to proscribe. We must examine then whether *Crawford* set forth a "watershed rule" of criminal procedure. As we have noted before, this exception is narrowly defined. *Johnson v. McKune*, 288 F.3d 1187, 1197-98 (10th Cir. 2002). "To qualify as a 'watershed' rule of criminal procedure, the rule must not only improve the

-12-

accuracy with which defendants are convicted or acquitted, but also alter our understanding of the *bedrock procedural elements* essential to the fairness of a proceeding." *Mora*, 293 F.3d at 1218-19 (quotation omitted). We conclude that the rule in *Crawford* does not meet this definition.

It is true that in *Crawford* the Court referred to the protections of the Confrontation Clause as a "bedrock procedural guarantee," *Crawford*, 124 S. Ct. at 1359, but that comment does not necessarily suggest that the rule set forth in *Crawford* is "on the magnitude of the rule announced in *Gideon v. Wainwright*"[5] as it must be to fit within the *Teague* exception. *See Mora*, 293 F.3d at 1219. Unlike *Gideon*, *Crawford* does not "alter[] our understanding of what constitutes basic due process," *Mora*, 293 F.3d at 1219, but merely sets out new standards for the admission of certain kinds of hearsay. Confrontation Clause violations are subject to harmless error analysis and thus may be excused depending on the state of the evidence at trial. *Crespin v. New Mexico*, 144 F.3d 641, 649 (1998). It would, therefore, be difficult to conclude that the rule in *Crawford* alters rights fundamental to due process. *See Mora*, 293 F.3d at 1219 (holding that *Apprendi v. New Jersey* did not alter fundamental due process rights, in part because *Apprendi* errors could be excused given overwhelming evidence). Accordingly,

---

[5] 372 U.S. 335 (1963) (holding that criminal defendants charged with serious offenses have the right to be represented at trial by counsel).

we conclude that *Crawford* is not a watershed decision and is, therefore, not retroactively applicable to Brown's initial habeas petition.

**2.      Pre-AEDPA Analysis**

We proceed to determine whether the admission of Vena's statements constituted a Confrontation Clause violation under our pre-AEDPA precedent. Under that precedent, we presume the factual findings of the "state court and the federal district court are correct unless clearly erroneous." *Crespin v. State of New Mexico*, 144 F.3d 641, 647 (10th Cir. 1998). Our determination concerning the reliability of the statement is a mixed question of law and fact reviewed de novo. *Id.*

In *Earnest v. Dorsey*, this court confronted a state court decision that relied on corroborating evidence as one factor supporting the reliability of testimonial hearsay. 87 F.3d 1123, 1133 (10th Cir. 1996) (applying pre-AEDPA standard). Without reliance on that factor, this court concluded that a co-defendant's hearsay statement was sufficiently reliable to avoid a Confrontation Clause violation under the *Roberts* test. *Id.* We reached that conclusion based on the self-inculpatory nature of the statement, the level of detail concerning the crime, and the absence of any offer of leniency to the co-defendant making the statement. *Id*. at 1133-34.[6] Those same factors are present here. The state court relied on

---

[6] In *Lilly v. Virginia*, a plurality of the Supreme Court expressly concluded that the absence of an offer of leniency and the presence of some statements

-14-

against penal interest were not relevant indicia of reliability which would support the admission of a co-defendant's confession under the *Roberts* test. 527 U.S. 116, 138-139 (1999). Justice Scalia wrote separately, concurring in the judgment but arguing that no confession could have been admitted in conformity with the Confrontation Clause without the prior opportunity to cross-examine. *Id.* at 143 (Scalia, J., concurring in part and concurring in the judgment). Assuming that Justice Scalia's separate concurrence should be counted as a fifth vote against consideration of the two factors described above, *Lilly* would affect our application of *Earnest* to this case. Because the decision in *Lilly* was announced after Brown's conviction became final, however, we must determine whether *Lilly* announced a new rule subject to the *Teague* retroactivity analysis.

"[A] case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction was final." *Teague*, 489 U.S. at 301 (1989). In *Earnest v. Dorsey*, we examined whether *Idaho v. Wright* announced a new rule when it held that corroborating evidence could not be used to demonstrate the reliability of a statement under the *Roberts* test. 87 F.3d 1123, 1132-33 (10th Cir. 1996). This court concluded that *Wright* announced a new rule because "a state court considering Earnest's claim in 1987 would [not] have felt compelled to conclude that the Constitution forbade the use of corroborating evidence to demonstrate the reliability of a hearsay statement." *Id*. at 1132.

We apply the same analysis here. This court must survey the case law as it existed prior to Brown's conviction to determine if the state court should have felt compelled to ignore the absence of an offer of leniency and the presence of statements strongly against penal interest in determining whether or not the admission of Vena's statement would violate the Confrontation Clause. Our own case law at the time would not have led the state court to that conclusion. *Earnest*, as discussed above, relied on both factors in support of its conclusion that the admission of the co-defendant's statement did not violate the Confrontation Clause. *Id*. at 1134. Likewise, nothing in the Supreme Court's cases applying *Roberts* mandated the conclusion that the absence of an offer of leniency was not an appropriate consideration in examining the reliability of a statement under *Roberts*. Moreover, while Supreme Court precedent called into doubt whether statements against penal interest came within a firmly rooted exception and had noted that co-defendant confessions were suspect, our own case law had not interpreted that to mean we should ignore a co-defendant's statement where that statement inculpated the co-defendant to a high degree. *United States v. Gomez*, 810 F.2d 947, 954 n.8 (10th Cir. 1987) (permitting the use of the fact that a statement was against the declarant's penal interest as "one factor entitled to some consideration" under the *Roberts* test). Accordingly, we

-15-

the following particularized guarantees of trustworthiness: Vena's statements were highly incriminating to him and made before his arrest, the colloquies between Vena and the investigating officers reflect the fact that Vena was not offered any leniency in exchange for his statements,[7] and Vena provided a level of detail about the crime and the location of evidence that would be difficult to fabricate. *Brown*, 953 P.2d at 1179-80.

Under the *Roberts* test, these considerations were relevant when considering whether Vena's statements were merely designed to mislead. In *Earnest* we recognized that statements with a high level of detail are "difficult to

conclude that at the time Brown's conviction became final the applicable case law did not dictate the conclusions reached in *Lilly*, and therefore *Lilly* announced a new rule with respect to the consideration of the absence of an offer of leniency and statements against penal interest.

We further conclude that the rule in *Lilly* does not meet either of the two exceptions to the *Teague* bar against retroactivity. Clearly, the rule does not bear on private conduct. Likewise, if the rule announced in *Crawford* was not a watershed rule, as we explained above, it is highly unlikely that this rule could meet that test. Barring the consideration of these factors under the *Roberts* analysis cannot be said to alter our understanding of bedrock procedural elements essential to the fairness of a proceeding. Therefore, *Lilly* does not affect our reliance on *Earnest*.

[7] We acknowledge that in his direct appeal, Vena argued that he had been induced to make the statements because he was informed by the investigating officers that they were chiefly interested in the "triggerman." The decision in Vena's direct appeal, however, makes clear that Vena had already provided a substantial amount of information, including the information concerning the planning of the murder, prior to that comment by investigators. *Vena v. Wyoming*, 941 P.2d 33, 37 (Wyo. 1997), *abrogated on other grounds by Vaughn v. Wyoming*, 962 P.2d 149 (Wyo. 1998).

render in a fabricated admission." 87 F.3d at 1134. Likewise, we noted that the absence of any offer of leniency undercuts the motive to lie. *Id.* Moreover, Brown does not challenge any of the facts related to the indicia of reliability. Guided by *Earnest*, we must conclude that under the applicable law at the time of the Wyoming Supreme Court's decision the admission of Vena's statements was not error. Accordingly, it is not necessary to address whether any error was harmless.

## IV. Conclusion

For the reasons above we **affirm** the district court's order denying Brown's 28 U.S.C. 2254 petition for habeas relief.

No. 03-8019, *Brown v. Uphoff*
**McCONNELL**, J., concurring.

I concur in the majority's disposition of this case, but do so on the basis of AEDPA deference. Although the Wyoming Supreme Court's decision in *Brown v. Wyoming*, 953 P.2d 1170, 1178 (Wy. 1998), is inconsistent with current precedent, I do not believe it was "contrary to clearly established federal law" at the time it was rendered. A decision is contrary to clearly established federal law if the state court "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law." *Williams v. Taylor*, 529 U.S. 362, 364 (2000).

The Wyoming Supreme Court applied the precedent of *Ohio v. Roberts*, 448 U.S. 56 (1980), under which testimonial evidence from unavailable witnesses could be admitted in a criminal trial if the statements bore "particularized guarantees of trustworthiness." *Id*. at 66. The Supreme Court has recently described this as an "amorphous" and "unpredictable" "balancing test." *Crawford v. Washington*, 541 U.S. ___, No. 02-9410, slip. op. 27 (Mar. 8, 2004). In light of the amorphous and unpredictable character of the test, I am skeptical that any particular application can accurately be described as "arriv[ing] at a conclusion opposite to that reached" by the Supreme Court.

The mere mention by the Wyoming Supreme Court of the voluntariness of Vena's confession does not, by itself, make the opinion "diametrically different" from *Lee v. Illinois*, 476 U.S. 530 (1986). A decade after *Lee*, this Court made

reference to voluntariness in the course of discussing the reliability of a co-defendant's confession. See *Earnest v. Dorsey*, 87 F.3d 1123, 1134 (10th Cir. 1996). Consistent with *Earnest*, *Lee* is best understood not as meaning that any reference to voluntariness is impermissible, but that evidence of voluntariness is not sufficient to establish a statement's reliability.

Nor was the Wyoming Supreme Court's discussion of corroborating evidence contrary to clearly establishment federal law. In *Idaho v. Wright*, 497 U.S. 805, 822 (1990), the Supreme Court held that hearsay evidence admitted against a criminal defendant under the residual hearsay exception "must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial." The Court stated that "the 'particularized guarantees of trustworthiness' required for admission under the Confrontation Clause must likewise be drawn from the totality of circumstances that surround the making of the statement and that render the declarant particularly worthy of belief." *Id.* at 820. The Court rejected the use of corroborating evidence to establish reliability on the ground that this "would permit admission of a presumptively unreliable statement by bootstrapping on the trustworthiness of other evidence at trial." *Id.* at 823.

The Wyoming Supreme Court's reference to corroborating evidence was as follows:

Finally, Vena provided a level of detail about the crime and the location of evidence that would be difficult to fabricate, that indicated intimate knowledge of the crime, and that was substantially corroborated when officers located shotgun parts and spent shells along the interstate.

*Brown v. State*, 953 P.2d at 1180 (citation omitted). This arguably was not the type of reference to corroborating evidence condemned in *Idaho v. Wright*. The Wyoming court said only that the confession contained a high level of detail, indicating intimate knowledge of the crime; it was these details (the location of shotgun shells and spent shells, which no one could have known who did not participate in the crime) that established its reliability. This is arguably distinguishable from *Wright*, where the state attempted to defend the reliability of hearsay testimony because of the existence of independent evidence in support of the same conclusion. The location of the shotgun shells and spent shells arguably fall within the permissible category of evidence bearing on the "totality of circumstances that surround the making of the statement and that render the declarant particularly worthy of belief," *Wright*, 497 U.S. at 820, as opposed to "bootstrapping on the trustworthiness of other evidence at trial." *Id.* at 823.

We know now that *Lee* and *Wright* were steps in the Supreme Court's path away from the "indicia of reliability" approach of *Roberts*, and toward a more "categorical" enforcement of the original meaning of the Confrontation Clause. *Crawford,* slip op. 32. For purposes of habeas review under AEDPA, however, the question is not whether the state court decision was correct, but whether it

violated "clearly established" federal law as reflected in Supreme Court decisions at the time.

Indeed, one of the reasons for jettisoning the "indicia of reliability" approach was its "unpredictable" character. See *Crawford*, slip op. 27 ("Reliability is an amorphous, if not entirely subjective, concept. There are countless factors bearing on whether a statement is reliable; the nine-factor balancing test applied by the Court of Appeals below is representative. Whether a statement is deemed reliable depends heavily on which factors the judge considers and how much weight he accords each of them.") (citation omitted). In light of the "amorphous" and "subjective" character of the inquiry in which it was engaged, I cannot say that the decision of the Wyoming Supreme Court was in violation of "clearly established" principles of federal law.

Accordingly, I concur in the judgment affirming the district court's dismissal of the petition for habeas review.