FILED
United States Court of Appeals
Tenth Circuit

October 5, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CHRISTOPHER WEEDMAN,

      Petitioner-Appellant,

v.

WARDEN STEVE HARTLEY and THE
ATTORNEY GENERAL OF THE
STATE OF COLORADO,

      Respondents-Appellees.

No. 10-1282
(D.C. No. 1:08-CV-01740-CMA)
(D. Colo.)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **KELLY**, **EBEL** and **LUCERO**, Circuit Judges.

Christopher Weedman seeks a Certificate of Appealability (COA) in order to

appeal the district court's dismissal of his petition for a writ of habeas corpus under 28

U.S.C. § 2254.  Weedman is serving a sentence of life in prison without the possibility of

parole after being convicted of first degree murder under Colorado law.  His conviction

and sentence were affirmed by the courts of Colorado on direct appeal, and his requests

for state post-conviction relief were denied.

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Then, on August 15, 2008, Weedman filed, pro se, a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Weedman raised, inter alia, four issues: (1) that his Sixth Amendment right to counsel was violated because a videotape was introduced at trial showing a police interrogation that continued after he requested counsel, (2) that his Fifth Amendment right to a fair trial was violated because the jury was shown the videotape of the police interrogation, (3) that his Sixth Amendment right to counsel was violated because his attorney failed to adequately investigate and present exculpatory evidence, and (4) that his Sixth Amendment Confrontation Clause rights were violated because the trial court admitted unreliable hearsay statements of a nontestifying co-defendant. The district court dismissed Weedman's petition and also denied his motion for a COA. Weedman filed motions for a COA and to proceed in forma pauperis with this Court. We deny those motions and dismiss this appeal.

## I.

Under 28 U.S.C. § 2253(c)(1)(A), Weedman may only obtain review of the district court's dismissal of his § 2254 petition if this Court elects to grant a COA. He may be granted a COA "only if [he] has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Weedman can make out such a showing by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" where the district court ruled on the merits of his claims. Slack v. McDaniel, 529 U.S. 473, 484 (2000).

## A.

First, Weedman argues that his Sixth Amendment right to counsel was violated

2

because a videotape was introduced at trial showing a police interrogation that continued after he requested counsel. Weedman argues that this was a structural error, which cannot be deemed harmless. We disagree.

A structural error "is a 'defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.'" Johnson v. United States, 520 U.S. 461, 468 (1997) (quoting Arizona v. Fulminante, 499 U.S. 279, 310 (1991)). But structural errors only occur in a "very limited class of cases." Id. This Court has found errors to be structural when there is a

> total deprivation of the right to counsel at trial, a biased presiding judge, the systematic exclusion of members of the defendant's own race from a grand jury, the denial of the right to self-representation at trial, the denial of the right to a public trial, the denial of the right to have a district judge (rather than a magistrate judge) preside over jury selection, and a defective reasonable doubt instruction.

Malicoat v. Mullin, 426 F.3d 1241, 1250 (10th Cir. 2005), cert. denied, 547 U.S. 1181 (2006).

Most constitutional errors that occur in trial proceedings are not structural, and, therefore, subject to harmless-error analysis. Fulminante, 499 U.S. at 306. That is because "the Constitution entitles a criminal defendant to a fair trial, not a perfect one." Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986). "[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis." Rose v. Clark, 478 U.S. 570, 579 (1986).

Here Weedman argues that his right to counsel was violated when he requested counsel during a police interrogation but the police continued to question him. Weedman

3

does not allege that he was totally deprived of counsel throughout trial. Nor does he allege any other violation found by this court to be structural error. Therefore, we agree with the district court that this does not amount to structural error and is, therefore, subject to harmless-error review. See United States v. Parra, 2 F.3d 1058, 1068 (10th Cir. 1993) (applying harmless-error review to erroneous introduction of statements made in response to a police interrogation after the defendant requested counsel).

A constitutional error does not warrant habeas relief unless it had a "substantial and injurious effect" on the jury's verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). We make this harmless-error determination based upon a review of the entire state court record. Herrera v. Lemaster, 225 F.3d 1176, 1179 (10th Cir. 2000).

We agree with the district court that any violation of Weedman's Sixth Amendment rights that occurred in the police interrogation was harmless error. When the police continued to question Weedman after he requested counsel, he did not confess, he did not incriminate himself, and he did not waver on his claim of innocence. (State Ct. R. Vol. 14.) Further, most of the substance of what was said in the police interrogation was also elicited from the testimony of trial witnesses. Weedman complains that in the video shown to the jury the police discussed his status as a fugitive, the likelihood that he would not testify at trial, and their opinion about his guilt. Multiple witnesses testified at trial about Weedman's status as a fugitive. (State Ct. R. Vol. 7, at 214, 282.) In fact, Weedman's attorney elicited that testimony. (Id.) And the court advised the jury that it could not consider Weedman's failure to testify as evidence of his guilt. (State Ct. R. Vol. 10, at 45.)

4

We are more concerned with the police officer's statements about their opinion of Weedman's guilt. The district court found that "a statement by a detective during an interview opining that a suspect is guilty is merely an accusation similar to the charges that ultimately may be filed against the suspect." Weedman v. Hartley, No. 08-cv-01740, 2010 WL 2593946, at *10 (D. Colo. June 23, 2010). We do see some merit in Weedman's argument that a jury will give undue weight to statements made by the police concerning their opinion about who committed a crime that they investigated. But while that may have been error, we find that it was harmless error. The court specifically instructed the jury that it should not take the charge against Weedman as evidence of his guilt. (State Ct. R. Vol. 10, at 38.) Further, reviewing the entire state court record and the weight of the evidence against Weedman, including the victim's blood found on his shoes and testimony from multiple witnesses about his interaction with the victim on the night of the murder, we conclude that this error did not have a substantial and injurious effect on the jury's verdict. Therefore, we cannot say that reasonable jurists would find the district court's assessment of this constitutional claim debatable or wrong. So Weedman is not entitled to a COA on this first issue.

**B.**

Second, Weedman argues that his Fifth Amendment right to a fair trial was violated because the jury was shown the videotape of the police interrogation. We disagree for the same reasons as the district court.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is

5

limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67–68 (1991). "Habeas relief may not be granted on the basis of state court evidentiary rulings unless they rendered the trial so fundamentally unfair that a denial of constitutional rights results." Mayes v. Gibson, 210 F.3d 1284, 1293 (10th Cir. 2000). In order to get habeas relief, the trial court's evidentiary error must be "so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." Fox v. Ward, 200 F.3d 1286, 1296–97 (10th Cir. 2000), cert. denied, 531 U.S. 938 (2000).

For the same reasons discussed in response to Weedman's first argument, we find that the introduction of the videotape of the police interrogation did not violate Weedman's Fifth Amendment right to a fair trial. Again, other witnesses testified about most of the substance that was on the videotape. And because of the overwhelming weight of additional evidence against Weedman, we cannot say that the introduction of this videotape was so grossly prejudicial that it fatally infected the entire trial. Therefore, reasonable jurists would not find the district court's assessment of this constitutional claim debatable or wrong. So Weedman is not entitled to a COA on this second issue.

## C.

Third, Weedman argues that his Sixth Amendment right to counsel was violated because his attorney failed to adequately investigate and present exculpatory evidence. Again we disagree.

To establish that counsel was ineffective, Weedman must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that

6

counsel's deficient performance resulted in prejudice to his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). So if Weedman fails to satisfy either prong, his ineffective assistance claim must be dismissed. Id. at 697. "Judicial scrutiny of counsel's performance must be highly deferential." Id. at 689. And there is a "strong presumption" that counsel's performance falls within the range of "reasonable professional assistance." Id. Weedman has the burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances. Id. Conclusory allegations that counsel was ineffective are not sufficient to warrant habeas relief. Humphreys v. Gibson, 261 F.3d 1016, 1022 n.2 (10th Cir. 2001).

Turning to the first prong, Weedman cannot establish that counsel's performance fell below an objective standard of reasonableness. Weedman complains that his counsel failed to introduce a statement made by his co-defendant to the police that the co-defendant and another juvenile, Danny Lake, committed the murder. (Aplt. B. at 3(f).) Weedman's counsel, however, cross-examined a detective that was present in an interview with Weedman's co-defendant. (State Ct. R. Vol. 9, at 54–100.) During that cross-examination, Weedman's counsel elicited some of the co-defendant's hearsay statements by reading parts of a transcript from that interview. (Id. at 75–80.) During that interview, the co-defendant implicated Danny Lake in the murder, as well as himself and Weedman. (Id. at 77–79.) The co-defendant also indicated in that interview that Danny Lake threatened to kill the co-defendant if he "snitched." (Id.)

Weedman seems to argue that his counsel should have introduced a recorded statement instead of his co-defendant's hearsay statement. (See Aplt. B. at 3(g) ("[A]

7

hearsay statement versus a recorded statement taken by the police does not carry the same weight as one another.").) But Weedman has not identified any written or recorded statements in the record that if introduced would have been any different from or more compelling than the hearsay elicited by his counsel. Further, Weedman has not pointed to any statement made by the co-defendant that exculpates Weedman. The only statement this Court can identify in the record based on Weedman's argument inculpates another juvenile, Danny Lake, but it also inculpates Weedman. Therefore, we cannot conclude based on the record that counsel's performance fell below an objective standard of reasonableness.

Weedman also seems to argue that counsel should have introduced this statement to show the trial court that the nontestifying co-defendant's hearsay statements were not reliable. Weedman suggests that counsel should have highlighted for the trial court the difference between his co-defendant's statement to the police, which inculpated the co-defendant, Danny Lake, and Weedman, and the co-defendant's statements to witnesses introduced at trial, which inculpated just the co-defendant and Weedman. (See Aplt. B. at 3(g).) While counsel did not use the specific statement that Weedman points to in his argument concerning the nontestifying co-defendant's hearsay statements, counsel did argue that the statements were unreliable. (State Ct. R. Vol. 5, at 15.) Counsel argued that the co-defendant's statements to various witnesses were different and inconsistent. (Id.) Under the circumstances, Weedman has failed to establish that this was not counsel's sound strategy; counsel made an argument that the nontestifying co-defendant's hearsay statements were not reliable without using a statement that inculpated his client.

8

That strategic choice by defense counsel does not fall below an objective standard of reasonableness. See Strickland, 466 U.S. at 690. Weedman alleges nothing more than conclusory allegations, and those allegations do not give rise to habeas relief.

Because Weedman failed to satisfy the first prong of the Strickland test, we need not even analyze the second prong. And because Weedman failed to satisfy even the first prong of the Strickland test, reasonable jurists would not find the district court's assessment of this constitutional claim debatable or wrong. So Weedman is not entitled to a COA on this third issue.

## D.

Finally, Weedman argues that the admission of unreliable hearsay statements of his nontestifying co-defendant violated his Sixth Amendment Confrontation Clause rights. Weedman argues that because his co-defendant exercised his Fifth Amendment right to not testify at trial, the introduction of his nontestimonial statements implicating himself and Weedman in the murder violated Weedman's Confrontation Clause rights. Weedman urges us to apply the old rule announced in Ohio v. Roberts to decide this Confrontation Clause issue. 448 U.S. 56, 66 (1970) (explaining that the admission of hearsay does not violate the Confrontation Clause if the declarant was unavailable to testify and the statement bore "adequate 'indicia of reliability'"), abrogated by Crawford v. Washington, 541 U.S. 36 (2004). But the district court determined that the new rule announced in Crawford v. Washington and further explained in Davis v. Washington applies to this case. 541 U.S. 36 (2004); 547 U.S. 813, 821 (2006) (clarifying that the Confrontation Clause does not apply to nontestimonial statements). The district court

9

stated that, "legal research has not led to the discovery of any Supreme Court or Tenth Circuit precedent that controls the outcome of this issue." Weedman, 2010 WL 2593946, at \*30. So it looked to a Sixth Circuit case and determined that the Crawford and Davis rule did apply retroactively. Id. at \*32–33.

Supreme Court and Tenth Circuit precedent establishes that Crawford does not apply retroactively. See Whorton v. Bockting, 549 U.S. 406, 409 (2007); Brown v. Uphoff, 381 F.3d 1219, 1226 (10th Cir. 2004) (both finding that under Teague v. Lane, 489 U.S. 288 (1989), Crawford should not be applied retroactively). No Supreme Court or Tenth Circuit precedent, however, indicates whether Davis applies retroactively. But we need not address that issue to resolve this case. Under either the old Roberts rule or the new rule announced in Crawford and further explained in Davis, Weedman's Confrontation Clause rights were not violated.

The right of a defendant to confront the witnesses against him is guaranteed by the Sixth Amendment and applies in both federal and state prosecutions. Stevens v. Ortiz, 465 F.3d 1229, 1235 (10th Cir. 2006), cert. denied, 549 U.S. 1281 (2007). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." Maryland v. Craig, 497 U.S. 836, 845 (1990). Therefore, "an out-of-court statement that falls within an exception to a hearsay rule under a state's evidentiary rules must nonetheless be excluded from a defendant's trial if its admission would deprive him of his constitutional right of confrontation." Stevens, 465 F.3d at 1236 (citing Dutton v. Evans, 400 U.S. 74 (1970)).

10

Under the Roberts rule, which was in place during Weedman's trial, the admission of a hearsay statement does not violate the Confrontation Clause if the declarant was unavailable to testify and the statement bore "adequate 'indicia of reliability.'" Roberts, 448 U.S. at 66. It is undisputed that the declarant, Weedman's co-defendant, was unavailable because he invoked his Fifth Amendment right not to testify. Therefore, the first part of this rule is satisfied. According to the second part of the Roberts rule, the reliability of a hearsay statement can be inferred from the fact that the statement falls "within a firmly rooted hearsay exception" or by "a showing of particularized guarantees of trustworthiness." Id. Generally, under this rule, "accomplices' confessions that inculpate a criminal defendant are not within a firmly rooted exception to the hearsay rule." Lilly v. Virginia, 527 U.S. 116, 119 (1999) (plurality opinion). So while the reliability of the hearsay statement that Weedman complains of cannot be inferred on that basis, the reliability can be inferred by a showing of particularized guarantees of trustworthiness.

The hearsay statements about which Weedman complains were made in the following circumstances: First, Weedman's co-defendant asked two witnesses to swear not to tell anyone about what he would say, and then he told them about the murder and the motives for the crime. (State Ct. R. Vol. 8, at 89.) Another statement was made when the co-defendant was watching a report of the murder on television with a witness. (State Ct. R. Vol. 8, at 130–31.) The witness asked him if he knew the victim, to which he responded that he and Weedman had killed her. (Id.) In all of the statements the co-defendant did not inculpate Weedman in order to exculpate himself. Instead he admitted

11

to two witnesses that both he and Weedman killed the victim under the impression that his statements would remain secret.  Further, the content of the statements made by the co-defendant included details about the crime, including the location of various stab wounds and the fact that the victim's body was left without certain articles of clothing, which were not released to the public.  (State Ct. R. Vol. 5, at 16–17; State Ct. R. Vol. 8, at 90–94.)  Therefore, particularized guarantees of trustworthiness exist, and the admission of these statements did not violate Weedman's Confrontation Clause rights under the Roberts rule.  See Brown, 381 F.3d at 1227 (finding that particularized guarantees of trustworthiness existed when the declarant's statements were self-inculpatory and included details of the crime).

The Supreme Court first criticized the Roberts rule in Crawford as a rule that was both underinclusive and overinclusive.  541 U.S. 36.  Then, two years later, the Supreme Court explained in Davis, that the Confrontation Clause has no application to nontestimonial hearsay statements.  547 U.S. at 821.  "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay, is not subject to the Confrontation Clause."  Id.  Weedman concedes that the hearsay statements complained of were nontestimonial in nature.  (Aplt. B. at 3(c).)  Further, the statements were made informally and out of court or custody to an acquaintance.  Therefore, the hearsay statements were nontestimonial, and under Davis the Confrontation Clause does not apply.  See Davis, 547 U.S. at 830 n.5 (explaining that "formality is indeed essential to testimonial utterance").  Thus, we conclude that analyzing Weedman's claim under Crawford and Davis, the admission of

12

these statements did not violate Weedman's Confrontation Clause rights.

Under either the Roberts rule or the Crawford and Davis rule, Weedman's Sixth Amendment Confrontation Clause rights were not violated. Therefore, reasonable jurists would not find the district court's assessment of this constitutional claim debatable or wrong. So Weedman is not entitled to a COA on this fourth issue.

## II.

After fully reviewing the record and Weedman's arguments, we hold that the district court correctly disposed of Weedman's claims in his petition. While there may have been error in the introduction of the videotape at trial that showed the police interrogation after Weedman requested counsel, that error was harmless. And the introduction of that videotape was not so grossly prejudicial that it fatally infected the entire trial. Weedman failed to establish that counsel's performance fell below an objective standard of reasonableness. And finally, under either the Roberts rule or the Crawford and Davis rule, the admission of the hearsay statements complained of did not violate Weedman's Confrontation Clause rights.

Weedman has not made a substantial showing of the denial of a constitutional right, and so we DENY a COA, DENY in forma pauperis status, and DISMISS this appeal.

Entered for the Court

David M. Ebel
Circuit Judge

13